**Ken ODEN, Individually and in his Capacity as Travis County Attorney, Appellant,**

v.

**Thomas J. READER, Appellee.**

**No. 12–94–00286–CV.**

Court of Appeals of Texas, Tyler.

Nov. 26, 1996.

Alysia Wightman, Harley Clark, Beverly G. Reeves, Austin, for appellant.

Robert A. Goodwin, Center, for appellee.

Before RAMEY, HOLCOMB and HADDEN, JJ.

HADDEN, Justice.

Appellant, Ken Oden ("Oden") appeals the trial court's interlocutory order denying his motion for summary judgment, which was based upon the affirmative defense of official immunity. Thomas J. Reader ("Reader") filed a defamation suit against Oden, individually and as County Attorney for Travis County, Texas, and two Texas newspapers, the *Dallas Morning News* and the *Austin American–Statesman.* Reader alleged that a public statement made by Oden and published in the two newspapers was false and,

by its nature, was defamatory. In response, Oden filed a motion for summary judgment alleging that he was entitled to absolute immunity and, alternatively, qualified immunity as a matter of law. The trial court denied Oden's motion and Oden now appeals. We will **reverse and render.**

### BACKGROUND

At all times pertinent to this case, Oden was the County Attorney of Travis County, Texas. In April 1991, Oden was investigating and prosecuting persons, including Reader, for criminal violations in connection with the solicitation and sale of insurance. These persons had allegedly sold insurance without being appointed and designated as an agent by an insurance company, in violation of Article 21.07A of the Texas Insurance Code.[1] On April 12, 1991, Reader entered into a negotiated plea agreement with Oden, and pleaded guilty to a violation of Article 21.07A. He was found guilty by the trial court, and was assessed the maximum fine of $500.00 for that violation. At the time of Reader's plea, Texas law provided that the penalty for such a violation was that the offender's "license shall automatically expire upon such conviction." TEX.INS.CODE ANN. § 21.07(12) (Vernon 1981). Thus, no action was taken by Oden regarding Reader's license, and the issue was not addressed by the trial court in its judgment and sentence.

A week later, on April 19, 1991, a related multimillion dollar class-action suit involving the bank that employed Reader and an insurance company was settled. Following the hearing for court approval of the class-action settlement, Oden and the attorneys involved

---

**1.** Any person who shall act as a life, health or accident insurance agent without having first obtained a license as herein provided, or who shall solicit life, health or accident insurance or act as a life, health or accident agent without having been appointed and designated by some duly authorized life insurance company, accident insurance company, life and accident, health and accident, or life, health and accident insurance company, or association, or organization, local mutual aid association, or statewide mutual association to do so as herein provided, or any person who shall solicit life, health or accident insurance or act as an agent for any person or insurance company or association not authorized to do business in Texas; or any officer or representative of any life insurance company, accident insurance company, life and accident, health and accident, or life, health and accident insurance company or association, or organization, local mutual aid association, or statewide mutual association who shall knowingly contract with or appoint as an agent any person who does not have a valid and outstanding license, as herein provided shall be guilty of a misdemeanor and, upon conviction, shall be fined any sum not in excess of Five Hundred Dollars ($500) and shall be barred from receiving a license as an insurance agent for a period of at least two (2) years.

in the civil case discussed the criminal and civil developments of the cases with the news media at the Travis County courthouse. The next day, the *Dallas Morning News* and the *Austin American–Statesman* published stories about the settlement and about Reader's conviction.

The story in the *Austin American–Statesman* included the following statement:

The proposed settlement comes after four months of negotiations but only one week after a loan broker was convicted in a Travis County courtroom of selling life and disability insurance on behalf of ClayDesta and Service Life & Casualty Insurance of Austin without the proper designation.

The broker, Tom Reader of Houston was fined $500., *and his license to sell insurance was revoked...* (Emphasis ours)

The story published in the *Dallas Morning News* included the following statement:

"Meanwhile, an investigation into criminal allegations about the loan program continues" said Travis County Attorney Ken Oden. He said one of the banks (sic) loan brokers pleaded guilty to an insurance code violation last week....

The proposed settlement came a week after one of the bank's three major loan brokers, Tom Reader of Houston pleaded guilty to a state insurance code violation. · "Mr. Reader was fined $500. *and lost his insurance license"* Mr. Oden said. (Emphasis ours)

It is undisputed that Oden told reporters at the press conference about Reader's conviction and his $500.00 fine. Exactly what Oden said about Reader's insurance license, however, is in dispute. At the time of the press conference, no action had been taken by the Texas Insurance Commission or any other state official to cancel, suspend, revoke, or take away Reader's state insurance license. The summary judgment evidence does reveal, however, that approximately ten months after Reader's conviction, the Texas Insurance Commission initiated preliminary proceedings to take some action regarding Reader's license. Patrick W. Dwyer, an official with the Texas Insurance Commission, stated in his deposition that the proceedings against Reader were later withdrawn without prejudice, and that the proceedings would not likely be reinstituted. According to Dwyer, the decision not to pursue the matter was based upon the merits of the case, the facts and circumstances of the case, and the prioritization of other cases according to the agency's resources.

On April 20, 1992, Reader filed a defamation suit against Oden and the two newspapers. He based his claim against Oden on Oden's published statement that Reader's insurance license had been "revoked" or "lost," when, in fact, his license was still in force and effect.

Oden filed a motion for summary judgment, asserting that he should be granted judgment as a matter of law because: 1) he was entitled to absolute immunity for any statements made pursuant to his duties as county attorney; and, alternatively, 2) he would be entitled to qualified immunity for any statements made in the good faith exercise of his duties as county attorney. In his response, Reader argued that Oden would not be entitled to absolute immunity in connection with statements made to the press because press releases would not be part of his quasi-judicial functions as county attorney. Further, Reader argued that Oden would not be entitled to qualified immunity because Oden's statement regarding Reader's license was false and was not made in good faith. The trial court denied Oden's motion for summary judgment, and Oden has filed this interlocutory appeal pursuant to Section 51.014(5) of the Texas Civil Practice and Remedies Code.[2]

### STANDARD OF REVIEW

■ A party moving for summary judgment must prove that no genuine issue of

2. Section 51.014(5) permits appeal of an order denying summary judgment to the extent that the appellant asserts official immunity as an affirmative defense. The statute provides: "A person may appeal from an interlocutory order of the district court, county court at law, or county court that: '... denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state." TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1996).

material fact exists and that he is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). In determining whether there is a disputed material fact issue, we must take as true the evidence favorable to the nonmovant and resolve any doubts in his favor. *Nixon,* 690 S.W.2d at 548–49. When, as in the present case, the movant is the defendant and bases his motion on an affirmative defense, he must prove each element of the defense as a matter of law. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). Until the movant conclusively establishes the affirmative defense, the nonmovant has no burden to raise a fact issue. Once the affirmative defense is established, the burden shifts to the nonmovant, who must present summary judgment proof raising an issue of fact as to the affirmative defense. *Torres v. Western Casualty & Sur. Co.,* 457 S.W.2d 50, 52 (Tex. 1970). The same appellate standard for the review of orders granting summary judgment applies to the review of orders denying motions for summary judgment that are based on official immunity. *Harris County v. Ochoa,* 881 S.W.2d 884, 886 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Thus, the governing standard applicable to this case is whether the summary judgment proof established, as a matter of law, that there is no genuine issue of material fact regarding the applicability and validity of Oden's immunity defenses.

## ABSOLUTE IMMUNITY

In his first point of error, Oden alleges that the trial court erred in denying his motion for summary judgment because he was entitled to absolute immunity from suit and liability as a matter of law. Oden contends that, as a public official and prosecutor, he was empowered with discretionary authority in furtherance of his quasi-judicial powers. He claims that this authority includes the power to communicate with the press and to keep the public informed regarding the outcome of criminal prosecutions brought by his office.

In response, Reader asserts that not all activities of a prosecutor are afforded absolute immunity protection. Reader argues that only those tasks performed by Oden in the necessary exercise of his quasi-judicial functions qualify for absolute immunity and that Oden's public statements to the press had no functional tie to the judicial process in the case. Thus, Reader asserts, Oden's statements were not deserving of absolute immunity protection. We agree.

The seminal case on prosecutorial immunity is *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). There, the Supreme Court held that prosecutors are cloaked with absolute immunity for actions taken in initiating a prosecution and in presenting the State's case. *Id.* at 431, 96 S.Ct. at 995. The common law immunity of a prosecutor is based upon the same considerations that underlie the common law immunities of judges acting within the scope of their duties, and has roots extending to the earliest days of the common law. *Id.* The court's holding in *Imbler* was premised on "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423, 96 S.Ct. at 991. Thus, a prosecutor's absolute immunity extends to activities intimately associated with the judicial phase of the criminal process. *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). The Fifth Circuit Court of Appeals has expressed its views thusly: "The purpose of the immunity doctrine is to avoid distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Geter v. Fortenberry,* 849 F.2d 1550, 1553 (5th Cir.1988). Official immunity may be either absolute or qualified, depending on the functions performed by the particular official at issue. *Id.*

Texas courts have followed the lead of the federal courts and have consistently held as a matter of law that absolute immunity extends to quasi-judicial officers, such as a county attorney acting in his official capacity as

prosecutor and performing such typical prosecutorial functions as initiating criminal prosecution and presenting the State's case. *Kimmell v. Leoffler,* 791 S.W.2d 648, 651 (Tex.App.—San Antonio 1990, writ denied); *Wyse v. Department of Public Safety,* 733 S.W.2d 224, 227 (Tex.App.—Waco 1986, writ ref'd n.r.e.). The Corpus Christi court of appeals has stated that an officer acts in a quasi-judicial capacity when he exercises some or all of the following specific powers:

(1) the power to exercise judgment and discretion;

(2) the power to hear and determine or ascertain facts and decide;

(3) the power to make binding orders and judgments;

(4) the power to affect personal or property rights of private persons;

(5) the power to examine witnesses, compel attendance of witnesses, and hear the litigation of issues on a hearing; and

(6) the power to enforce decisions or impose penalties.

*Town of South Padre Island v. Jacobs,* 736 S.W.2d 134, 144 (Tex.App.—Corpus Christi 1986, writ denied) (op. on reh'g).

■ In prosecuting Reader for suspected violations of the Texas Insurance Code, Oden was authorized to exercise the powers enumerated above. However, the question we must first address is whether Oden's statement to the news media, whether true or false, constituted the exercise of one of these powers. From the summary judgment evidence, it appears that Reader's trial, and Oden's quasi-judicial duties in connection with that trial, were completed eight days before the press conference. Although Oden's quasi-judicial duties involved further investigations and prosecutions into allegedly illegal bank loans and insurance schemes, Oden's quasi-judicial duties relating to the prosecution of Reader had terminated. His comments to the media had no functional tie to the judicial process even though they were made in his capacity as a prosecutor. It has been said that "the speech of a counsel is privileged by the occasion on which it is spoken." *Buckley,* 509 U.S. at 277, 113 S.Ct. at 2618; *quoting Flint v. Pike,* 107 Eng.Rep.

1136, 1138 (K.B.1825). At the press conference, Oden did not act in his role as a quasi-judicial officer. The press conference did not involve the initiation of a prosecution, the presentation of a State's case in court, or the actions preparatory for these functions. Therefore, using the functional approach of *Imbler* and *Buckley,* and the more specific guidelines in *Town of South Padre Island,* we conclude that Oden was not acting in a quasi-judicial capacity in making the statement to the *Dallas Morning News* and the *Austin American–Statesman,* and that he was not entitled to absolute immunity.

■ Oden argues that any communications made in the furtherance of exercising his quasijudicial powers in prosecuting Reader would be absolutely privileged, and he cites for his position *Martinez v. Hardy,* 864 S.W.2d 767 (Tex.App.—Houston [14th Dist.] 1993, no writ). However, the communication in *Martinez* (that a county employee willfully falsified a jury excuse form) was made between a district clerk and a deputy district clerk in connection with the exercise of their official duties regarding personnel, evaluation, and staffing. There, the court held that the activities of the district clerk and the deputy district clerk were absolutely privileged because they involved the deliberative process concerning the discharge of a deputy district clerk, and that communications made in furtherance of that process were quasi-judicial. In the instant case, communications made by Oden to the press cannot be connected to the furtherance of his quasi-judicial duties of prosecuting Reader. Oden's press releases were administrative duties of his office. "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley,* 509 U.S. at 273, 113 S.Ct. at 2615; *see Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

■ Further, Oden argues that he is entitled to absolute immunity since he is obligated to make statements to the press under the admonition of Article 2.03(b) of the Texas Code of Criminal Procedure. He cites *Geter*

*v. Fortenberry* and *Marrero v. Hialeah,* 625 F.2d 499, 511 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981) in support of his assertion. Article 2.03(b) provides that it is the duty of the attorney representing the State to "afford the public the benefits of a free press." TEX. CODE CRIM.PROC.ANN. art. 2.03(b) (Vernon 1977). Thus, statements to the press may be an integral part of a prosecutor's job and may serve a vital public function. However, as stated in *Buckley,* that function is an administrative function of the prosecutor's office, rather than a quasi-judicial function. Furthermore, neither *Geter* nor *Marrero* applied the doctrine of absolute immunity to a press release by the prosecutors; instead, those cases afforded the prosecutors the benefit of qualified immunity, the application of which is hereinafter addressed.

For the above reasons, we hold that Oden was not entitled to absolute immunity for statements made to the news media, and that the trial court did not err in denying Oden's motion for summary judgment on those grounds. Oden's point of error number one is overruled.

### QUALIFIED IMMUNITY

■ In his second point of error, Oden alleges that the trial court erred in denying his motion for summary judgment because he was entitled to qualified immunity from suit and liability for Reader's defamation claims as a matter of law. We agree. When a prosecutor "functions as an administrator rather than as an officer of the court," he is entitled to qualified immunity. *Imbler,* 424 U.S. at 431, 96 S.Ct. at 996; *Buckley,* 509 U.S. at 273–75, 113 S.Ct. at 2616. "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Burns v. Reed,* 500 U.S. at 494–95, 111 S.Ct. at 1944; *Malley v. Briggs,* 475 U.S. 335, 342–43, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986).

An official who is charged with making public statements as a part of his discretionary functions would be unduly inhibited in the exercise of that duty if he were not afforded some degree of immunity for state-ments issued in the discharge of his duty. *Geter,* 849 F.2d at 1553; *Marrero,* 625 F.2d at 511. The policy reasons justifying the application of qualified immunity are similar to the policy reasons justifying the application of absolute immunity. In *Scheuer v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974), the Supreme Court stated that the doctrine of qualified immunity rests on two mutually independent rationales:

(1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligation of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good.

■ In *Marrero,* the Fifth Circuit Court of Appeals stated that both of the above rationales apply to a prosecutor's statements to the press which he is authorized to make as a part of his discretionary duties. *Marrero,* 625 F.2d at 511. The Court reasoned that the strong public policy in favor of a free flow of information concerning the affairs of government and the apprehension of criminals supports the grant of a limited privilege, lest the public be deprived of significant information due to an official's reluctance to speak. *Id.* Texas law authorizes county attorneys to speak to the press regarding criminal prosecutions as part of their discretionary duties for the purpose of keeping the public informed. *See* TEX.CODE.CRIM.PROC. ANN. art. 2.03(b) (Vernon 1977). Therefore, to the extent that Oden made the statements to the press in the exercise of his discretionary duties, he is entitled to assert a qualified immunity defense. *Kimmell,* 791 S.W.2d at 651; *Wyse,* 733 S.W.2d at 227.

■ To be entitled to summary judgment on the affirmative defense of qualified official immunity, Oden must establish that: (1) his position as county attorney has quasi-judicial status; (2) it was within his authority as county attorney to make the alleged statements; and (3) he was acting in good faith. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). From the summary judgment evidence, it appears that Oden, as

a county attorney, was charged with the responsibility of representing the state in all criminal cases prosecuted within his county. TEX. CONST. art. 5, § 21; TEX.CODE CRIM. PROC.ANN. art. 2.02 (Vernon Supp.1996). In light of this constitutional and statutory responsibility, it would be the principal duty of the county attorney to investigate and prosecute the violation of all criminal laws. *Shepperd v. Alaniz*, 303 S.W.2d 846, 850 (Tex.Civ. App.—San Antonio 1957, no writ) (the principal duty of the county attorney has always been to investigate and prosecute the violation of criminal laws). In furtherance of this duty, Texas law authorizes county attorneys to speak to the press regarding criminal prosecutions as part of their discretionary duties for the purpose of keeping the public informed. TEX.CODE.CRIM.PROC.ANN. art. 2.03(b) (Vernon 1977); *Geter*, 849 F.2d at 1556; *Marrero*, 625 F.2d at 511. The summary judgment evidence presented by Oden, which establishes his quasi-judicial status as county attorney and his authority to make statements to the press regarding Reader's prosecution for insurance code violations, is uncontroverted. Thus, the first two prongs of the qualified immunity defense have been proven by Oden.

The only remaining issue is whether or not a genuine issue of fact remains regarding the third prong of qualified immunity; that is, whether Oden was acting in good faith when he made the statements to the news media. In *City of Lancaster*, the Texas Supreme Court adopted an "objective legal reasonableness" test for the element of good faith in official immunity cases. *City of Lancaster*, 883 S.W.2d at 656. In that case, the court held that a police officer acts in good faith in a pursuit case if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend a suspect outweighed a clear risk of harm to the public in continuing the pursuit. *Id.* This objective standard has been applied to other governmental officials claiming the affirmative defense of qualified immunity. *E.g., City of Palestine v. Ramirez*, 925 S.W.2d 250, 253–54 (Tex.App.—Tyler 1996, no writ) (chief of police in an employment dispute); *Tarrant County v. Dobbins*, 919 S.W.2d 877, 882 (Tex.App.—

Fort Worth 1996, writ requested) (performance of duties by a county death investigator).

However, in *Font v. Carr*, 867 S.W.2d 873, 879 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.), the Houston court of appeals applied a subjective standard to determine whether a prosecutor acted in good faith regarding a bail bond matter. The court stated that the determination of subjective good faith was based on whether the prosecutor's actual motive was bad faith hostility toward the bail bondsman. We have reviewed the evidence in the present case under both standards, and conclude that Oden has established that he acted in good faith as a matter of law.

The summary judgment evidence presented by Oden which bears on his good faith is as follows:

1. An affidavit of Ken Oden, in which he stated that he entered into a negotiated plea agreement with Tom Reader in open court. Reader agreed to plead guilty to a violation of the Texas Insurance Code and agreed to pay a $500.00 fine. Reader was subsequently convicted of the Insurance Code violation. Oden stated that it was his understanding of the insurance laws that Reader's conviction would result in the cessation of his eligibility to hold an insurance license. He stated that, to his knowledge, the statements made to the press were accurate and were made in good faith, based on his interpretation of the Insurance Code and its penalties.

2. An affidavit of Tom Wells, the County Attorney and felony prosecutor in Lamar County, Texas. Wells stated that he was then serving as chairman of the Prosecutor Standards and Guidelines Committee, had served on the Board of Disciplinary Appeals with the State Bar of Texas, and had assisted in the preparation of the final draft of proposed Prosecutor Standards and Guidelines that were presented to the legislature. Wells stated that the committee, in drafting the proposed Prose-

cutor Standards and Guidelines, considered the duty of a prosecutor to keep the public informed with regard to the status of cases being handled by that attorney. He stated that it was very common and clearly within the authority of the county attorney to answer questions from the press and to make press releases on behalf of the State regarding cases under investigation, and the status or outcome of prosecutions.

3. An affidavit of John J. Douglas, Dean Emeritus of the National College of District Attorneys and author of a book entitled, *Ethical Issues for Prosecutors*. Douglas is a licensed attorney in Texas, has lectured throughout the United States on prosecutorial ethics, and was on the faculty of the University of Houston Law Center. Douglas confirmed in his affidavit that a prosecutor had the duty to keep the public informed, to answer questions from the press, and to make press releases on behalf of the State with regard to the status or outcome of cases being prosecuted by his office.

4. An affidavit of Melvin D. Clanton, former manager of the Agents and Administrative Review Sections of the Texas Department of Insurance, where he served for more than twenty years. Clanton reviewed the transcript of the guilty plea hearing in the prosecution of Reader, and stated that when an agent is criminally convicted of a violation of the type to which Reader pleaded guilty, it would be the responsibility of the Department of Insurance to initiate an administrative proceeding for revocation of the agent's license. He further stated that, under normal procedures, a formal hearing should have been a matter of course, and that proof of the criminal conviction in such a hearing would be sufficient to revoke an agent's license.

5. Letter from John M. Schiltz, staff attorney for the Texas Department of Insurance, which was authenticated by Oden's attorney. The letter, dated February 7, 1992, was addressed to Thomas Jack Reader and conveyed the Department's notice of intention to institute disciplinary action. This letter simply informed Reader that the agency was considering initiating disciplinary action against him under provisions of the Texas Insurance Code. The letter advised Reader that he had a right to show that he had not engaged in any of such conduct, and that agency proceedings would be initiated if the agency had not been contacted within ten days of the date of the letter.

Based upon the above, Oden argues that his statements to the press about the consequences of Reader's conviction were well within the accepted practice of prosecutors throughout the state regarding statements to the press, and exhibited good faith conduct.

In addition to the summary judgment evidence, Oden also points out that the statutory penalty for the violation of Article 21.07A of the Texas Insurance Code would be that the offender's "license shall *automatically expire* upon such conviction." Tex.Ins.Code Ann. art. 21.07 § 12 (Vernon 1981) (emphasis added). Article 21.07 § 10(a)(1) provides that the State Board of Insurance may *revoke* the offender's license for willfully violating any provisions of the insurance laws. Tex.Ins.Code.Ann. art. 21.07 § 10(a)(1) (Vernon 1981). Also, Article 21.07A of the Insurance Code provides that an offender, "upon conviction, shall be fined any sum not in excess of $500.00 and *shall be barred* from receiving a license as an insurance agent for a period of at least two years." Tex.Ins. Code.Ann. art. 21.07A (Vernon 1981). The summary judgment evidence indicates that the Texas Department of Insurance subsequently instituted proceedings to terminate Reader's insurance license, but that Reader's license was not revoked. Oden argues that these statutes provide the basis for his understanding that the expected result of Reader's conviction would be that his insurance license would automatically "expire," be "barred," or would otherwise be lost. Oden asserts that his reliance upon these statutes shows that he was acting in good faith. The fact that Reader's license ultimately was not

terminated does not lead to the conclusion that Oden was acting in bad faith *at the time* that he made the alleged statement.

Reader responded with the following summary judgment evidence:

1. Affidavit of Thomas J. Reader in which he stated that his insurance license had not been revoked on April 12, 1991, the date of the disposition of his misdemeanor charge. He further stated that his insurance license had not been revoked on April 20, 1991, the date Oden allegedly made the statement to the newspapers. Reader asserts that Oden "assured me that there would be no further punitive disciplinary proceedings against my insurance license."

2. The oral deposition of Patrick W. Dwyer, an official with the Texas Insurance Commission, the material portions of which show that the Insurance Commission ultimately did not take any action to revoke Reader's insurance license.

3. The judgment and sentence in Cause No. 353231, State of Texas v. Tom Reader, County Court at Law, Travis County, Texas, which do not mention the status of Reader's insurance license.

4. The Statement of Facts in Cause No. 353231, wherein Oden stated to the court that the plea bargain agreement between the State and Reader was that Reader was to plead guilty to a violation of Article 21.07A of the Insurance Code and pay the maximum fine of $500.00 for that single violation. Nothing was stated at the hearing regarding the revocation of Reader's insurance license. However, Oden did state to the court that the State had agreed that Reader would have no further *criminal* liability through his part in the program.

Reader argues that the evidence set forth above proves that Oden's statement was false since Reader's license had not been revoked and since Oden told him that there would be no further punitive disciplinary proceedings against his insurance license. He claims that the evidence shows that Oden's statements to the press were not made in good faith and that a fact issue remains to be determined.

We have reviewed the summary judgment evidence presented by both parties, and we conclude that no genuine issue of fact remains on the issue of whether Oden was acting in good faith. First, the statement in the *Austin American–Statesman* that Reader's license to sell insurance "was revoked" was not attributed to Oden. Oden denies that he made that statement, and none of Reader's summary judgment evidence controverts this. Secondly, the article in the *Dallas Morning News,* which attributed to Oden the statement that Reader was fined $500.00 and "lost" his insurance license, was consistent with the penalty for a violation of Article 21.07A. Oden's statement to Reader that there would be no further punitive disciplinary proceedings against his insurance license was consistent with the plea bargain agreement and his authority as Travis County Attorney. Neither the statement of facts relative to the plea bargain nor the judgment of commitment mentioned anything about the termination or retention of Reader's license. The only statement material to this issue in those proceedings was the statement by Oden that there would be no further *criminal* liability. These statements are consistent with Oden's representation to Reader that there would be "no further punitive disciplinary proceedings" because Oden, as Travis County Attorney, did not have the authority to initiate any proceedings regarding the revocation or retention of Reader's license. Those proceedings could only be initiated by the Texas Insurance Commission.

In summary, we hold that the summary judgment evidence establishes that Oden acted in good faith as a matter of law in making the statements regarding Reader's license. Oden was aware of the Insurance Code's automatic expiration provision and believed that it meant revocation was automatic. Although the truth or falsity of Oden's statement is not dispositive of the case, it is relevant to the issue of good faith. The language used in the Texas Insurance Code in three separate provisions provide

that upon conviction of a violation of the Code, an agent's license shall "expire," "be barred," or "revoked." Oden's statement at the press conference, insofar as he was quoted by one newspaper, was consistent with these statutory provisions, two of which mandated the termination of Reader's insurance license. Furthermore Oden's statements to the press were not inconsistent with his statement at the hearing that no *further* disciplinary action will be taken regarding Reader's insurance license. Reader has provided no summary judgment evidence which would sufficiently defeat Oden's claim of official immunity. The third prong necessary to the affirmative defense of qualified immunity has been met, and Oden was entitled to summary judgment under that doctrine. Consequently, the trial court erred in denying Oden's motion. Oden's point of error number two is sustained.

Accordingly, we **reverse** the trial court's order denying summary judgment **and render** judgment sustaining Oden's defense of qualified immunity. We further order that Reader take nothing against Oden.

