Allan HAWKINS, Appellant,

v.

Al WALVOORD; Allen D. Cummings; Cotton, Bledsoe, Tighe & Dawson, A.P.C.; Michael T. Morgan; Midland County Bar Association; Midland County Bar Plan; Michael C. Tighe; Victor Torres; Carmen Eiker; John J. Rivas; Harper Estes; Jeff Norwood; James Fitz–Gerald; John Hyde; George D. Gilles; Dean Rucker; Vann Culp; Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.; Mark Dettman; Pat Baskin; Willie B. Dubose; J.A. Bobo; Ralph Petty; Lynch, Chappell & Alsup, P.C.; Hinkle, Cox, Eaton, Coffield & Hensley; and Gary Painter, Appellees.

No. 08–98–00441–CV.

Court of Appeals of Texas, El Paso.

Aug. 3, 2000.

Allan Hawkins, Midland, for Appellant.

Randall L. Rouse, Shafer, Davis, Ashley, O'Leary & Stoker, Odessa, George William Shepherd, Cruse Scott Henderson & Allen, Houston, Harris E. Kerr, Kerr & Ward, L.L.P., Midland, Leslie Byron Vance, Office of the Atty. Gen., Austin, John Cornyn, Atty. Gen., Midland, Andrew M. Taylor, Bracewell & Patterson, Austin, Shane Phelps, DeLeon, Boggins & Icenogle, P.C., Austin, Louis V. Carrillo, Asst. Atty. Gen., Austin, Russell W. Malm, Midland County Atty., Midland, for Appellees.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

Plaintiff Allan Hawkins, an attorney in Midland, Texas, appeals the trial court's final summary judgment for all defendants. Hawkins' lawsuit stems from his refusal to accept court appointments to represent indigent criminal defendants, or alternatively participate in the Midland County Bar Plan (the Plan) allowing him to opt out of such appointments by paying a yearly fee. We affirm.

## FACTS

In the early 1980s, the Midland County Bar Association adopted the Plan to facilitate appointment of attorneys to represent indigents charged with crimes. Before the Plan was adopted, Midland County trial judges customarily appointed attorneys for eligible criminal defendants on a rotating alphabetical basis; many lawyers were appointed under this system who did not ordinarily practice criminal law. The Plan allowed lawyers who preferred not to receive court appointments the option of paying a yearly fee to a fund used to pay other attorneys (presumably those with a criminal law practice) who wanted appointed work. Payments under the Plan are voluntary. Lawyers paying into the Plan are retained in the alphabetical rotation for criminal appointment, but when their names come up, other lawyers volunteering for additional criminal defense work are appointed in their stead. Thus, any lawyer opting not to join the Plan receives no more indigent appointments than he or she would have received before the Plan's inception.

Hawkins, an attorney specializing in estate planning and probate law in Midland County, elected not to participate in the Plan. Thus, he remained on the traditional alphabetical rotation list of attorneys eligible for criminal appointments, and was appointed by Judge James Fitz–Gerald to represent Daniel Sundy, an indigent defendant charged with possession of marijuana.[1] Hawkins filed a "motion for appointment of an effective and competent attorney" requesting that he be released from representing Sundy. Judge Fitz–Gerald held a hearing, found that Hawkins was qualified, competent, and fully capable of representing Sundy, and denied the motion. Although the county clerk sent Hawkins notice to appear for docket call in Judge Al Walvoord's court, neither Hawkins nor Sundy appeared. Judge Walvoord issued a show cause order inquiring into Hawkins' conduct relating to the Judge Fitz–Gerald appointment and Hawkins' dealings with his client Sundy. Hawkins responded that he did not represent Sundy despite Judge Fitz–Gerald's order appointing him and the judge's specific findings he was competent and denying him leave to withdraw as counsel. Judge Walvoord held a contempt hearing regarding Hawkins' actions, found him in contempt of court, and assessed punishment. Soon thereafter, Judge Jim Bobo of neighboring Ector County was assigned to determine Hawkins' guilt in the contempt action. After hearing, Judge Bobo found that Hawkins had committed four different acts of contempt and assessed punishment. Judge Bobo's order further provided that Hawkins could purge himself of all four counts by paying $250 to the Midland County Bar Association for participation in the Plan, and by executing a document stating that in all future years in which he practiced in Midland County, he would either pay the fee or accept all court appointments. Because Hawkins paid the $250 and signed the document, the court found that he had purged himself of contempt. Hawkins has also been subject to disciplinary action by the State Bar of Texas.

On March 10, 1997, Hawkins filed suit for damages he allegedly suffered as a result of the Plan. Defendants consist of judges, law firms, lawyers, the Plan, the Midland County Bar Association, and the Midland County Sheriff.[2] Hawkins alleged conspiracy, duress, coercion, false imprisonment, malicious prosecution, extortion, racketeering, organized crime, restraint of trade, violation of anti-trust prohibitions, slavery, unlawful taking of

1. See *Hawkins v. Commission for Lawyer Discipline,* 988 S.W.2d 927 (Tex.App.—El Paso 1999, pet. denied).

2. This appeal is only the latest chapter in Hawkins' saga. See *Hawkins v. Commission for Lawyer Discipline,* 988 S.W.2d 927 (Tex. App.—El Paso 1999, pet. denied); *Ex parte Hawkins,* 885 S.W.2d 586 (Tex.App.—El Paso 1994, no writ); *Perez v. State,* 885 S.W.2d 568 (Tex.App.—El Paso 1994, no writ).

property, retaliation, oppression, illegal use of the United States mail, and violation of his constitutional and civil rights.

On August 31, 1998, after defendants filed their answers and discovery had been conducted, defendants filed their respective motions for summary judgment. On October 5, 1998, the trial court granted defendants' motions for summary judgment without stating any grounds for the court's decision. This appeal follows.

## STANDARD OF REVIEW

■ This court recently reiterated the principles that form the appropriate standard of review in a traditional summary judgment:

> The standard of review on appeal of a summary judgment is whether the movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. Thus, the question is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. Where the defendants are the movants and they submit summary judgment evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. Alternatively, the defendant-movant must conclusively establish

each essential element of an affirmative defense as a matter of law such that there is no genuine issue of material fact. The defendant urging summary judgment on an affirmative defense is in much the same position as a plaintiff urging a motion for summary judgment on an affirmative claim. The movant must come forward with summary judgment evidence for each element of the affirmative defense. Unless the movant conclusively establishes the affirmative defense, the respondent plaintiff has no burden to present summary judgment evidence to the contrary.[3]

Additionally, when the motion for summary judgment is based on several different grounds and the order granting the motion is silent as to the reason for granting the motion, as is true in the present case, the appellant must show that each independent ground alleged in the motion is insufficient to support summary judgment, and the summary judgment must be affirmed if any of the theories is meritorious.[4]

### Summary of this court's holding

Although Hawkins raises twenty-two issues on appeal, we address only his issues eight through twenty-two, as we find these dispose of the case. Hawkins' claims are barred by statutes of limitations, absolute judicial immunity, derivative judicial immunity, and prosecutorial immunity. Moreover, no genuine issue of material fact exists as to causation. Finding at least one valid ground for summary judgment as to each defendant, we affirm.

### Statute of Limitations

In his twenty-first issue, Hawkins contends that the trial court erred by grant-

---

**3.** *Carrera v. Yepez,* 6 S.W.3d 654, 660–61 (Tex. App.—El Paso 1999, pet. filed) (citations omitted).

**4.** *White v. Mellon Mortg. Co.,* 995 S.W.2d 795, 799 (Tex.App.—Tyler 1999, no pet.) (citing *State Farm Fire & Cas. Co. v. S.S. & G.W.,* 858 S.W.2d 374, 380 (Tex.1993)); *see Riddick v. Quail Harbor Condominium Ass'n, Inc.,* 7 S.W.3d 663, 669 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (stating that summary judgment may be affirmed on any of movant's theories that has merit).

ing summary judgment based on the affirmative defense of the statute of limitations because the appellees did not prove the dates of the facts that support each claim, nor did they prove which statute is applicable. As an example, Hawkins discusses the four-year statute of limitations for a civil RICO claim. Hawkins relies on *Klehr v. A.O. Smith Corporation*[5] and the U.S. Supreme Court's analogy to the Clayton Act for his contention that a new period of limitations begins with each overt act that is part of the violation and that injures the plaintiff. Thus, according to Hawkins, each overt act that is part of the pattern begins a new four-year period, and injuries within the last four years are not barred.[6]

Assuming without deciding that Hawkins' claims are otherwise valid, his actions sounding in tort are clearly barred by the applicable two-year limitations period.[7] Hawkins' other claims, including his civil RICO claim, are subject to a residual four-year limitation statute.[8]

■ Here, the summary judgment evidence reveals that on March 12, 1992, Midland County District Judge Pat M. Baskin wrote a letter to Hawkins, in which Judge Baskin reminded Hawkins of past times when the court postponed appointing him to represent indigent defendants or relieved him of that responsibility because the court believed that Hawkins was under considerable stress resulting from personal problems. Judge Baskin told Hawkins that the court could no longer appoint other attorneys to substitute for him, and the court would soon be entering an order appointing Hawkins to represent an indigent defendant, and if he chose to challenge the order, the court would act to enforce it. Four days later, Hawkins responded:

I can think of no greater abuse of judicial power than the threat by a judge to imprison an individual if they decline to pay money to some particular cause of that judge whether that be a fund for campaign expenses for that judge, a favored charity of that judge, an individual favored by that judge, or a governmental or quasi-governmental entity.

It is my understanding that you have informed me that, if I do not pay money to a fund created by some colleagues of yours, you will put me in jail.

I consider the Midland County Bar Association and the judges who have conspired with them to be operating an extortion racket providing judicial 'protection' to those who pay a fee to the Bar Association fund while using the courts to extort that fee from those who are placed on a list created by the conspirators.

I consider this a gross violation of criminal laws of the State of Texas and the United States.

Those who are participating in the conspiracy are engaging in racketeering and corrupt practices.

I will not participate. It is unethical. It is illegal. It is immoral.

When deposed, Hawkins stated that in his letter he was referring to the lawyers who participated in the Plan as well as judges. We find that this letter demonstrates that Hawkins was aware of alleged violations of his rights, on or before March 16, 1992.

■ The question before us, then, is when did the civil RICO claim, which is the claim with the longest possible limitation period, accrue? Was it when Hawkins discovered his injury or when Hawkins

---

5. 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997).

6. *See id.* at 189–90, 117 S.Ct. 1984, 1990–91.

7. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon Supp.2000).

8. This statute provides that "[e]very action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (Vernon 1997).

discovered both the injury and the pattern of alleged racketeering activity? After oral argument was heard in this case, the United States Supreme Court addressed this issue. In *Rotella v. Wood, et al.*,[9] the high court affirmed a Fifth Circuit ruling and held that, based on the principles of *Klehr*, a civil RICO claim accrues upon discovery of the injury alone.[10] Under *Rotella*, therefore, Hawkins civil RICO claim expired March 16, 1996, almost a year before he filed suit.

■ We find summary judgment was proper on statute of limitations grounds as to Walvoord, Norwood, Fitz–Gerald, Bobo, Dettman, Petty, Painter, the Plan, MCBA, Tighe, Torres, Eiker, Rivas, Estes, Morgan, Cummings,[11] Cotton, Stubbeman, Lynch, and Hinkle.[12] Hawkins' twenty-first issue is overruled.

### Absolute Judicial Immunity for Judges Culp, Baskin, Rucker, Gilles, Hyde, DuBose, Walvoord, Norwood, Fitz–Gerald, and Bobo

In Issues Eight through Eighteen, Hawkins contends that the trial court erred in granting summary judgment on the basis of judicial immunity. In his deposition, Hawkins testified that he sued Judges Culp, Baskin, Gilles, Hyde, and DuBose because they participated in either the creation or implementation of the Plan. His only apparent basis for suing Judge Rucker is that Judges Rucker, Baskin, and DuBose have each appointed him to represent indigent defendants. Judge Fitz–Gerald appointed Hawkins to represent an indigent defendant (Sundy) in a pending criminal proceeding in his court, and Judge Norwood held the hearing after Sundy complained that his lawyer would not represent him. Judge Walvoord ordered Hawkins' incarceration for contempt and Judge Bobo heard Hawkins' contempt proceeding stemming from his refusal to accept a criminal appointment. All judges sought summary judgment based on absolute judicial immunity.

■ Absolute privilege is founded on the theory that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury that may result to a particular harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of actions taken in the exercise of their official responsibilities, even though, at times, it may result in individual citizens suffering pecuniary loss as a result of oppressive or

**9.** 528 U.S. 549, 120 S.Ct. 1075, 1077, 145 L.Ed.2d 1047, (2000).

**10.** *Rotella*, 120 S.Ct. 1075, 1078–79, 1080.

**11.** We note that one of Hawkins' issues on appeal not discussed in the text of this opinion is that summary judgment was not proper as to Cummings because, although the summary judgment motion that Cummings and Cotton filed mentions both parties in the title of their document, the text of their motion makes no mention of or prayer for relief for Cummings. Although the record supports Hawkins' argument, his contention is without merit for purposes of our statute of limitations analysis because Cummings filed a supplemental summary judgment motion, the text of which includes Cummings in the list of defendants asserting the limitations affirmative defense.

**12.** In their appellate brief, Culp, Baskin, Rucker, Gilles, Hyde, and DuBose assert both judicial immunity and the statute of limitations. We recognize that in their amended motion for summary judgment filed on September 14, 1998 at 11:07 a.m., Culp, Baskin, Rucker, Gilles, Hyde, and DuBose expressly adopted Stubbeman's Motion for Summary Judgment and Motion to Dismiss for Lack of Subject Matter Jurisdiction in its entirety. That document, which was originally filed on August 31, 1998 and which did not include the statute of limitations affirmative defense, was later supplemented on September 14, 1998 at 4:45 p.m. to include that defense. Because Stubbeman's supplement post-dates Culp's, Baskin's, Rucker's, Gilles's, Hyde's, and DuBose's amended summary judgment motion, their amended motion does not incorporate Stubbeman's supplemental motion, and therefore, we cannot say that Stubbeman asserted the limitations affirmative defense, too.

malicious actions by government officials.[13] This case squarely fits within this theory.

 Texas follows the principles of judicial immunity set out by the United States Supreme Court in *Stump v. Sparkman:* [14] absolute immunity extends to all judicial acts unless such acts fall clearly outside the judge's subject-matter jurisdiction.[15] In determining whether absolute judicial immunity applies, we face a two-part inquiry: (1) whether the acts complained of were judicial; and (2) whether those acts were clearly outside the judge's jurisdiction.[16] We consider the following factors in determining whether a judge's acts are judicial: (1) whether the act complained of is one normally performed by a judge; (2) whether the act occurred in the courtroom or an appropriate adjunct such as the judge's chambers; (3) whether the controversy centered around a case pending before the judge; and (4) whether the act arose out of a visit to the judge in his judicial capacity.[17] These factors are broadly construed in favor of immunity.[18] Immunity may exist even if three of the four factors are not met.[19] The factors need not be given equal weight in all cases; rather, they should be weighed according to the facts of the particular case.[20]

 With regard to jurisdiction, " '[w]here a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes.' " [21] The focus is not on whether the judge's specific act was proper or improper, but on whether the judge had the jurisdiction necessary to perform an act of that type.[22]

 Article 1.051 of the Texas Code of Criminal Procedure provides that "[a]n indigent defendant is entitled to have an attorney appointed to represent him in any adversary judicial proceeding that may result in punishment by confinement and in any other criminal proceeding if the court concludes that the interests of justice require representation. If an indigent defendant is entitled to and requests appointed counsel, the court *shall* appoint counsel to represent the defendant as soon as possible." [23] Additionally, Article 26.04 of the same Code provides that "[w]henever the court determines that a defendant charged with a felony or a misdemeanor punishable by imprisonment is indigent or that the interests of justice require representation of a defendant in a criminal proceeding, the court *shall* appoint one or more practicing attorneys to defend him...." [24] Clearly, the good that is accomplished by these two provisions in protecting the rights of the indigent population of the general public outweighs any wrong or injury that may arguably have resulted to Hawkins. If every attorney in Midland County behaved as Hawkins has, no indigent defendant would receive legal representation, and the criminal justice system would grind to a halt.[25]

---

13. *Martinez v. Hardy*, 864 S.W.2d 767, 772–73 (Tex.App.—Houston [14th Dist.] 1993, no writ).

14. 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

15. *Garza v. Morales*, 923 S.W.2d 800, 802 (Tex.App.—Corpus Christi 1996, no writ); *Bradt v. West*, 892 S.W.2d 56, 66 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

16. *Bradt*, 892 S.W.2d at 67.

17. *Id.*

18. *Id.*

19. *Id.*

20. *Id.*

21. *Id.* at 68.

22. *Garza,* 923 S.W.2d at 802.

23. Tex.Code Crim. Proc. Ann. art. 1.051(c) (Vernon Supp.2000) (emphasis added).

24. *Id.* at art. 26.04(a) (Vernon 1989) (emphasis added).

25. *See Oliver v. State,* 872 S.W.2d 713, 716 (Tex.Crim.App.1994) (stating that in criminal case involving indigent defendant, trial court cannot conduct any adversary judicial proceedings with respect to formal criminal charges until accused is represented by attorney).

The contentions underlying Hawkins' lawsuit are that his constitutional and civil rights were violated when he was forced to choose appointments to represent indigent criminal defendants, or paying fees into the Plan. The judges' actions in furthering their own responsibilities mandated by the Texas Code of Criminal Procedure were judicial acts within their jurisdiction. This lawsuit is grounded in judicial acts, either by appointing Hawkins or by ratifying the Plan. These factors weigh in favor of judicial immunity and because we find that these judges had jurisdiction based on the Texas Code of Criminal Procedure, we conclude that the actions of Judges Culp, Baskin, Rucker, Gilles, Hyde, DuBose, Walvoord, Norwood, Fitz–Gerald, and Bobo were protected by judicial immunity. Summary judgment was properly granted on this ground. Issues Eight through Eighteen are overruled.

## Derivative Judicial Immunity and Prosecutorial Immunity

Next, we address Hawkins' nineteenth and twentieth issues, urging that Sheriff Painter did not enjoy derivative judicial immunity and Prosecutors Dettman and Petty were not protected by prosecutorial immunity. Our discussion here is also germane to Hawkins' concern, expressed during oral argument, that in certain county courts, judges delegate to their administrative staffs the rubber-stamping of the judges' signatures on orders appointing counsel for indigents. Hawkins argues this is not a judicial function, as the judge has no knowledge of any particular order.

▆▆▆▆ When judges delegate their authority or appoint persons to perform services for the court, their judicial immunity may follow that delegation or ap-

pointment.[26] In Texas, judicial immunity applies to officers of the court who are integral parts of the judicial process, such as a prosecutor performing typical prosecutorial functions, court clerks, law clerks, bailiffs, constables issuing writs, and court-appointed receivers and trustees.[27] The key consideration in determining whether an officer is entitled to judicial immunity is whether the officer's conduct is a normal function of the delegating or appointing judge.[28] Whether an act is judicial in nature is determined by the act's character, not by the character of the agent performing it.[29] Based on these principles, we conclude that the delegation of the court administrator's duty in selecting the next name on the list of licensed attorneys in the county and rubber-stamping the judge's signature on an order designating that attorney to represent an indigent defendant in a criminal proceeding, a duty that, by statute, is a normal function of the trial judge, is judicial in nature. In other words, the trial judge's judicial immunity follows this particular delegation of duty because this duty is a judicial function.

▆▆▆▆ Moreover, as an officer of the court who played an integral part of the judicial process, this same analysis applies to Painter, who arrested and placed Hawkins in the county jail on two separate occasions, pursuant to facially valid judicial orders. Similarly, with regard to Petty and Dettman, judicial immunity extends to quasi-judicial officers, such as the county attorney acting in his official capacity as prosecutor and performing typical prosecutorial functions, including initiating criminal prosecution and presenting the state's case.[30] The common law immunity of a prosecutor is based upon the same considerations that underlie the common law im-

---

26. *Byrd v. Woodruff*, 891 S.W.2d 689, 707 (Tex.App.—Dallas 1994, writ dism'd by agreement).

27. *Id.*

28. *Id.*

29. *Id.*

30. *Oden v. Reader*, 935 S.W.2d 470, 474–75 (Tex.App.—Tyler 1996, no writ); *Kimmell v. Leoffler*, 791 S.W.2d 648, 651 (Tex.App.—San Antonio 1990, writ denied), *abrogated on other grounds, Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex.1993).

munities of judges acting within the scope of their duties.[31] A prosecutor's absolute immunity extends to activities intimately associated with the judicial phase of the criminal process.[32]

Here, as evidenced by Petty's affidavit supporting the summary judgment motion, all of Petty's and Dettman's actions in prosecuting the contempt actions against Hawkins after he failed to appear as appointed attorney for an indigent defendant were functions taken in the course of their prosecution of orders to show cause. Petty and Dettman were not acting as private attorneys, as Hawkins suggests. Contempt proceedings are quasi-criminal in nature, they conform to criminal procedures, they are analogous to a complaint supporting a misdemeanor criminal information, and the prosecution of such a complaint is not left to the private citizen, but is the responsibility of the State.[33] Here, Petty and Dettman were county attorneys performing typical prosecutorial functions under the umbrella of immunity.

Because we find that the appellees named and discussed within this section enjoyed either absolute judicial immunity, derivative judicial immunity, or prosecutorial immunity, we overrule these issues.

### No Genuine Issue of Material Fact Exists as to Causation[34]

Finally, in Issue Twenty–Two, Hawkins contends that the trial court erred in granting the appellees' traditional summary judgment motion because there remains a disputed issue of fact, namely whether the Plan, through its control over court appointments, caused Hawkins to be appointed to represent indigent defendants in criminal proceedings because he did not pay fees under the Plan.

To prevail on this issue, defendants must conclusively disprove at least one element of each of the plaintiff's causes of action, and here, all of Hawkins' claims required a showing of causation. There is no evidence of the requisite element of cause in fact. Specifically, there is no evidence that the defendants did anything that caused Hawkins to receive a court appointment that he would not have otherwise received, which is the underlying foundation for all of Hawkins' causes of action.

Cause in fact is an essential element of every negligent or intentional tort recognized in Texas.[35] Cause in fact, which is an essential element of proximate cause,[36] is also required in a civil RICO action.[37] Cause in fact means that the act or omission complained of was a substantial factor in bringing about the injury, and without the act or omission, no harm would have occurred to the plaintiff.[38] Cause in fact cannot be established by mere conjecture, guess, or speculation.[39] It cannot be

**31.** *Oden*, 935 S.W.2d at 474.

**32.** *Id.*

**33.** *In re Reed*, 901 S.W.2d 604, 608 (Tex. App.—San Antonio 1995, no writ) (concluding that it was appropriate for State, through Attorney General's office, to bear responsibility for prosecution of contempt charge levied against Judge Reed).

**34.** This issue is germane for all appellees, with the exception of the judges, for whom we have already determined judicial immunity applies.

**35.** *Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 130 (Tex.App.—Texarkana 1994, no writ).

**36.** *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995).

**37.** *See First Nationwide Bank v. Gelt Funding Corp., et al.*, 27 F.3d 763, 769 (2nd Cir.1994) (noting that proximate cause in civil RICO action requires (1) "but-for" causation, also known as cause-in-fact, and (2) legal or proximate cause), *cert. denied*, 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995).

**38.** *See Doe*, 907 S.W.2d at 477.

**39.** *Id.*

shown if the defendant's negligence did no more than furnish a condition that made the injury possible.[40] " 'The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries .... [and] justify the conclusion that such injury was the natural and probable result thereof.' "[41] In other words, even if the injury would not have happened but for the defendant's conduct, the connection between the defendant and the plaintiff's injuries simply may be too attenuated to constitute legal cause.[42]

 The summary judgment motion filed by the Midland County Bar Association, the Plan, Tighe, Torres, Eiker, Rivas, Estes, and Morgan was based in part upon Hawkins' response to the Request for Production filed by Lynch, Stubbeman, Hinkle, Cotton, and Cummings. Hawkins' response includes documentation showing that participation in the Plan was voluntary, and if one chose *not* to participate, that attorney's name would simply remain on the alphabetical roster for criminal appointments in the county and district courts. Summary judgment evidence shows that those attorneys who chose not to participate in the Plan were not affected in any way by the Plan's existence. As a nonparticipant in the Plan, Hawkins remained in the rotation for indigent criminal appointments and suffered no legal injury because of its existence.

Here, the summary judgment evidence shows as a matter of law that neither the Plan, the implementing Bar Association, nor any of the lawyers or law firms named were a cause in fact of Hawkins' alleged injuries. Defendants have conclusively negated Hawkins' contention that "but for" the Plan's existence, he would have not been injured. Because these defendants have disproven a requisite element in each of Hawkins' claims, summary judgment was proper on this basis. This issue is overruled.

## CONCLUSION

Having found that applicable statute of limitations, judicial immunity or prosecutorial immunity bar all of Hawkins' claims against all defendants, and having found no genuine issue of material fact as to causation in fact, we find the trial court's order granting summary judgment was proper on at least one ground as to every defendant. We therefore need not address the remainder of Hawkins' contentions.

The judgment of the trial court is affirmed.

---

40. *Id.*

41. *Id.* (quoting *Carey v. Pure Distrib. Corp.,* 133 Tex. 31, 124 S.W.2d 847, 849 (Tex.1939)).

