**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00051-CV**
_____

**STEPHEN HARTMAN, Appellant**

**V.**

**THE ESTATE OF JOE ALFORD, Appellee**

**On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-198,246**

**MEMORANDUM OPINION**

Stephen Hartman (Hartman) appeals the trial court's order granting The Estate of Joe Alford's (Alford) plea to the jurisdiction and motion for traditional summary judgment.[1] In six issues before the Court, Hartman argues that the trial court erred when it found that Alford had absolute prosecutorial immunity and therefore, could

---

[1] Joe Alford died during the underlying litigation.

1

not be held liable for Hartman's claims of malicious prosecution and conspiracy. We affirm the judgment of the trial court.

## I. Background

In a prior opinion, we provided a detailed background of this case. *See Walker v. Hartman,* 516 S.W.3d 71, 75–78 (Tex. App.—Beaumont 2017, pet. denied). Accordingly, we only discuss the background facts necessary for the resolution of this case. In May 2013, Hartman attempted to serve Judge Layne Walker of the 252nd Jefferson County District Court with process papers for a federal lawsuit. According to Hartman, he had sought to serve Walker at his residence, but Walker and Walker's son threatened him. Hartman then tried to serve Walker at his place of employment.

Hartman arrived at Walker's courtroom to serve the process papers. Walker was on the bench, working the district court's docket for that morning. According to Hartman, he sat in the gallery of the courtroom and quietly approached the court's bailiff about serving Walker. Hartman asserts he never crossed the bar of the courtroom or attempted to serve Walker during a judicial proceeding and did not disrupt the judicial proceedings. Another bailiff told Hartman to leave, but he refused. Hartman was arrested and held all day in a holding cell behind the courtroom. Hartman's personal belongings were confiscated, including a camera pen

2

that recorded a video of Hartman's arrest. Hartman alleged the bailiffs, Walker, and Walker's staff later illegally accessed the pen's recordings. While detained in the holding cell, Hartman was allowed to serve Walker in the court's jury room. Hartman stated that only after he was transferred to the Jefferson County Jail that evening did they inform him of the charges against him.

The Jefferson County Sheriff's Department charged Hartman with Interfering with Public Duties and Disrupting a Public Meeting. Several lawyers and witnesses signed affidavits about Hartman's behavior and his arrest that day in the courtroom.[2] Jefferson County Court at Law Judge Lupe Flores appointed Attorney Joe Alford to act as District Attorney Pro Tem (DAPT) and transferred the case to Orange County. Alford, acting as a DAPT, prosecuted the case against Hartman in Orange County and charged Hartman with a "Class B misdemeanor of Hindering a Proceeding by Disorderly Conduct." *See* Tex. Penal Code Ann. § 38.13 (West 2016). Ultimately, the charges were dismissed.

Hartman filed federal and state lawsuits against Walker, the bailiffs, sheriff's department employees, and the individuals who signed affidavits about Hartman's

---

[2] Hartman argues that the affidavits are false and contends Walker and Jefferson County Sherriff's Department employees instructed the witnesses "to provide perjured affidavits and one false witness statement, to support Hartman's arrest and prosecution[.]" Hartman also sued the witnesses who signed statements.

3

conduct. His federal lawsuit was dismissed. In his state lawsuit against Alford, Hartman alleges, among other things, that Alford "was [an] illegal DAPT prosecutor" acting on Walker's, the District Attorney's, and Judge Flores's orders and "undertook tortious misconduct[.]" Hartman argues this conduct constituted a "conspiracy" orchestrated by Walker, the Jefferson County District Attorney, and Flores to have Alford "maliciously prosecute Hartman" based on perjured affidavits. According to Hartman, Alford had no legal authority to prosecute him, and Alford knew from the beginning of his investigation that he was engaging in a "malicious and illegal prosecution." Hartman asserts that because Alford was a private attorney and not a government employee, he is not entitled to prosecutorial immunity, and thus does not have a defense under the Texas Torts Claims Act (TTCA). In Alford's fifth amended plea to the jurisdiction and motion for traditional summary judgment, he argues that he is entitled to "absolute prosecutorial immunity" against Hartman's state tort law causes of action.

After a hearing, the trial court granted Alford's plea to the jurisdiction. Hartman timely filed this interlocutory appeal.

4

## II. Standard of Review

Section 51.014 of the Texas Civil Practice and Remedies Code gives us jurisdiction over this interlocutory appeal of the trial court's granting of Alford's plea to the jurisdiction. *See* Tex. Civ. Prac & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2018).

"Absolute prosecutorial immunity is properly asserted in a plea to the jurisdiction because it deprives the court of all subject matter jurisdiction over the case." *Hays v. Campos*, No. 13-15-00216-CV, 2015 WL 5135946, at *2 n.3 (Tex. App.—Corpus Christi Aug. 31, 2015, no pet.) (mem. op.) (citations omitted). A plea to the jurisdiction is a dilatory plea typically used to defeat a plaintiff's cause of action regardless of whether the claims have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review a trial court's ruling on a plea to the jurisdiction based on immunity from suit under a de novo standard. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When doing so, we examine the factual allegations in the pleadings and relevant jurisdictional evidence. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625–26 (Tex. 2010); *Bland*, 34 S.W.3d at 555. When pleadings are challenged by a plea to the jurisdiction, a court must determine whether the pleader has alleged facts affirmatively demonstrating the court's jurisdiction, and the court must liberally construe the

5

pleadings. *Miranda*, 133 S.W.3d at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). "However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Miranda*, 133 S.W.3d at 227 (citing *Bland*, 34 S.W.3d at 555). In that situation, our review of a plea to the jurisdiction is much like a traditional motion for summary judgment. *See id*. at 228.

### III. Analysis

### A. Prosecutorial Immunity

Hartman contends that Alford is not entitled to prosecutorial immunity because "Alford was an illegal prosecutor who knowingly joined an extra-judicial conspiracy to fabricate false criminal charges against [him]."[3] Prosecutors enjoy

---

[3] We note that Hartman cites to Texas Code of Criminal Procedure article 2.07 to support his allegation that Alford is an illegal prosecutor and not entitled to prosecutorial immunity. Tex. Code of Crim. Proc. Ann. art. 2.07 (West 2005). We are unpersuaded by this argument. According to Hartman, Alford acted as an illegal DAPT under article 2.07, because he did not file his oath of office with the clerk of the court. *Id.* Hartman objected to Alford's authority before the trial court and Hartman's criminal charges were dismissed based on Alford's failure to file an oath of office as required by article 2.07. *See State v. Newton*, 158 S.W.3d 582, 588–89 (Tex. App.—San Antonio 2005, pet. denied) (holding an objection to a DAPT's authority is not properly preserved for appellate review unless objected to in the trial court); *see also* Tex. Code. Crim. Proc. Ann. art. 2.07.

Although Alford did not file his oath of the office with the trial court, we focus on "the conduct for which immunity is claimed, not on the harm that the conduct

absolute immunity under common law. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). "Texas courts have followed federal courts and consistently held as a matter of law that absolute immunity extends to quasi-judicial officers, including prosecutors performing such typical prosecutorial functions as initiating criminal prosecution and presenting the State's case." *Brown v. Lubbock Cty. Comm. Court*, 185 S.W.3d 499, 505 (Tex. App.—Amarillo 2005, no pet.) (citing *Oden v. Reader*, 935 S.W.2d 470, 474–75 (Tex. App.—Tyler 1996, no pet.)). "Activities intimately associated with the judicial phase of the criminal process, such as initiating a prosecution and presenting the State's case, are functions to which absolute immunity applies with full force." *Lesher v. Coyel*, 435 S.W.3d 423, 430 (Tex. App.—Dallas 2014, pet. denied) (citing *Imbler*, 424 U.S. at 430).

Prosecutorial immunity has also been applied to bad acts performed by the prosecutor. *See Imbler*, 424 U.S. at 427 (explaining that absolute immunity applies

---

may have caused or the question whether it was lawful." *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993); *see Charleston v. Pate*, 194 S.W.3d 89, 91 (Tex. App.—Texarkana 2006, no pet.) (holding that "[i]t is the nature of one's activity, not one's title or qualifications, that gives rise to the prosecutorial immunity." An argument that a prosecutor was not properly appointed and failed to take the oath of office is baseless when the attorney "actively assisted the district attorney in filing and prosecuting [the case,]" making her "de facto assistant district attorney, and her authority cannot be attacked in a collateral proceeding") *see also* Tex. Code of Crim. Proc. Ann. art. 2.07. Thus, in determining whether Alford acted as a prosecutor, we examine not his title but whether his actions entitled him to prosecutorial immunity.

to a prosecutor who engages in "malicious or dishonest action"); *see also Burns v. Reed*, 500 U.S. 478, 489–90 (1991) (noting that "prosecutors and other lawyers were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings . . . and also for eliciting false and defamatory testimony from witnesses"); *Lesher*, 435 S.W.3d at 430–431 (applying absolute immunity to a prosecutor accused of withholding grand jury book from grand jury); *Clawson v. Wharton Cty.*, 941 S.W.2d 267, 272 (Tex. App.—Corpus Christi 1996, pet. denied) (reasoning a prosecutor accused of taking bribes still enjoys absolute immunity because "[a]bsolute immunity will shelter a prosecutor even should he act maliciously, wantonly, or negligently") (citation omitted).

This absolute immunity is effective against all civil lawsuits whether the lawsuit originates in federal court or state court and whether the allegations are lodged against the individual in his personal or official capacity. *Clawson*, 941 S.W.2d at 273; *see also Lesher*, 435 S.W.3d at 430; *Brown*, 185 S.W.3d at 505. Prosecutors are entitled to absolute immunity for exercising their judgment in presenting evidence and in conducting trials in criminal cases. *Imbler*, 424 U.S. at 427. Allowing anything less than absolute immunity would result in an "adverse effect upon the criminal justice system" and "better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the

8

constant dread of retaliation." *See id.* at 426, 428 (citations omitted). "[T]he alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id.* at 427–428.

Hartman alleges that because Walker and his deputies had the witnesses submit false affidavits, Alford engaged in an "extra-judicial conspiracy" by knowingly using the false affidavits to prosecute him. According to Hartman, the video recording of his arrest shows the witnesses' affidavits are false.

Assuming without deciding that the affidavits contained false information, Alford is still entitled to absolute prosecutorial immunity for his actions. As we have noted, the United States Supreme Court has held that we examine the actions of a prosecutor to determine if he is entitled to absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (noting that courts "look[] to 'the nature of the function performed, not the identity of the actor who performed it'") (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). If an individual's actions are "intimately associated" with his job responsibilities as a prosecutor, he enjoys absolute immunity no matter if he acted maliciously, in bad faith, or with ulterior motives. *Charleston v. Pate*, 194 S.W.3d 89, 90–91 (Tex. App.—Texarkana 2006,

9

no pet.) (noting prosecutorial functions include acts representing the government in filing and prosecuting criminal cases) (citations omitted).

> [W]e modify our extension to the present case of the *San Filippo* holding that absolute immunity does not apply to conspiracies to present false testimony at trial. The holding in *San Filippo* is based on the crucial distinction between the presentation of perjurious testimony and a conspiracy to present perjurious testimony. With regard to witnesses, the distinction is important because witnesses enjoy immunity only for their actions in testifying and are not immune for extra-judicial actions such as an alleged conspiracy to present false testimony. The distinction is immaterial, however, with regard to prosecutors, who enjoy immunity not just for the presentation of testimony but, as discussed above, for all actions relating to their advocacy.

*Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (citing *San Filippo v. United States Trust Co.*, 737 F.2d 246 (2d Cir. 1984)). Hartman's classification of Alford's actions as an "extra judicial conspiracy" does not change Alford's entitlement to absolute prosecutorial immunity for conduct intimately associated with his actions as a prosecutor.

Alford's review of Hartman's case and decision to file criminal charges are actions intimately related to the prosecutorial function, and Hartman is not allowed redress under civil law. *See Imbler*, 424 U.S. at 427. Alford asserts in his affidavit that he was not present in the courtroom when Hartman was arrested, nor did he participate in any investigation. He states he filed his information based on the file presented to him by the Jefferson County District Attorney's Office. His actions, even if premised on perjured or misleading information, are cloaked with absolute

10

privilege. "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley*, 509 U.S. at 273; *see also Bradt v. West*, 892 S.W.2d 56, 70–71 (Tex. App.—Houston [1st Dist.] 1994, pet. denied) (explaining that absolute immunity is "strong medicine" but necessary, among other reasons, to protect a prosecutor in altering his judicial judgment based on "personal ramifications of his decision rather than rest that decision purely on appropriate concerns") (citations omitted); *Oden*, 935 S.W.2d at 474–475 (noting that "absolute immunity extends to quasi-judicial officers, such as a county attorney acting in his official capacity as prosecutor and performing such typical prosecutorial functions as initiating criminal prosecution and presenting the State's case") (citations omitted). Alford is entitled to absolute prosecutorial immunity.

## B. Immunity and TTCA

In his original petition, Hartman asserts malicious torts against Alford that come within the Texas Tort Claims Act (TTCA). *See* Tex. Civ. Prac. & Rem. Code § 101.106(e) (West 2019). "[A]ll tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under

[the Tort Claims Act]' for purposes of section 101.106." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).

Government officials are entitled to immunity against state tort claims while working in their official capacity. *Hillman v. Nueces Cty.*, No. 17-0588, 2019 WL 1231341, at \*1, 8 (Tex. Mar. 15, 2019); *see also Univ. of Tex. Med. Branch v. Hohman*, 6 S.W.3d 767, 779 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.). According to section 101.106(f),

> [i]f a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) (West 2019).

While a government employee cannot be sued in his official capacity, a government employee maybe be individually liable if the employee commits a tort, even in the scope of their employment. *Franka v. Valesquez*, 332 S.W.3d 367, 383 (Tex. 2011).[4] "Accordingly, the applicability of subsection (a) to the underlying suit

---

[4] There is extensive discussion in both Hartman and Alford's briefs about election of remedies under section 101.106. Tex. Civ. Prac. & Rem. Code Ann. § 101.106 (West 2019). Section 101.106 forces a plaintiff to make an election whether to sue a person in their individual capacity or the government unit. *See Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017) (citations omitted) ("The Tort Claims Act provides a limited waiver of governmental immunity . . . and contains an election-of-remedies provision intended to 'force a plaintiff to decide at the outset whether an employee

turns on whether the suit is considered to be against the [defendants] in their individual or official capacities." *Alexander v. Walker*, 435 S.W.3d 789, 791 (Tex. 2014). If the suit is against a person in an individual capacity, it "requires us to make a determination as to (1) whether the alleged conduct was within or without the scope of the [defendants'] employment, and (2) whether [the Plaintiff's] suit could have been brought under the TTCA against the [defendants'] governmental employer." *Id*. at 791–92 (citing Tex. Civ. P. Rem. Code Ann. § 101.106(f)).

---

acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable'") (internal citations omitted). This election of remedies bars the plaintiff "immediately and forever" from filing litigation against the other based on the same situation. *See Molina v. Alvarado*, 463 S.W.3d 867, 870 (Tex. 2015). In a limited situation, under subsection (b), if a plaintiff sues an employee in their official capacity, the statute allows for the plaintiff to amend their pleadings to sue the government unit instead. *See id.*; Tex. Civ. Prac. & Rem. Code Ann. § 101.106(b). Hartman admits in his brief that he sued Alford in his individual capacity and not in an official capacity. Our review focuses on whether Alford was working in his individual capacity, as alleged by Hartman, or whether Alford was a government employee acting "within the scope of his employment" to qualify for immunity under section 101.106(f). *See Tex. Adjutant General's Office v. Ngakoue*, 408 S.W.3d 350, 357 (Tex. 2013) (citations omitted) ("enacting subsection (f), the Legislature 'foreclose[d] suit [under the TTCA] against a government employee in his individual capacity if he was acting within the scope of employment. This furthers one of the primary purposes of both the TTCA generally and section 101.106 in particular—to protect governmental employees acting in the scope of employment") (internal citations omitted).

13

**1. Scope of Employment**

The Tort Claims Act defines "[s]cope of employment]" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5) (West 2019). Officials act within the scope of employment if their acts fall within the duties generally assigned to them. *Ollie v. Plano Indep. Sch. Dist.*, 383 S.W.3d 783, 791 (Tex. App.—Dallas 2012, pet. denied) (citations omitted).

> The scope-of-employment analysis, therefore, remains fundamentally objective: Is there a connection between the employee's job duties and the alleged tortious conduct? The answer may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to her job responsibilities.

*Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017) (citation omitted). Thus, even if acting to serve the purpose of a third person, as long as their conduct "falls within the duties assigned," the conduct is within the government employee's scope of employment. *Anderson v. Bessman*, 365 S.W.3d 119, 125–126 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citations omitted).

According to the affidavit of Alford, Judge Flores contacted him to act as DAPT, did not give any "significant detail" about the case, and told Alford to do

14

"what you think is right." Alford cites to several situations that he was not present or personally involved:

(1) he was not present in the courtroom on May 28, 2013, for Hartman's arrest,
(2) did not participate in any searches of Hartman's property,
(3) did not attend any meetings in Walker's chambers after Hartman's arrest,
(4) was not a part of any attempts by outside parties to get public information requests from the Jefferson County District Attorney's office,
(5) was not involved with any attempts to revoke Hartman's professional licenses,
(6) did not participate in any "pre-charge investigations, nor investigations per se, nor any direct investigations . . . nor give instruction with respect to, any witness statements, affidavits, or probable cause affidavits,"
(7) and was not involved in any decisions regarding what was in the district attorney's file.

Alford states he only reviewed the file Jefferson County District Attorney's office presented to him and made the "prosecutorial decision" to charge Hartman. He believed that Hartman's actions warranted the charges, but he "did not meet with, and conspire with, anybody to maliciously prosecute this case against Hartman[.]"

The decision to prosecute is an act intimately associated and integral to the judicial phase of the criminal process. *Clawson*, 941 S.W.2d at 272. This is a quintessential function of a prosecutor. *Id.; see also Imbler*, 424 U.S. at 430–31 (held initiating and presenting the State's case is an act intimately associated with prosecutor's judicial processes); *Brown*, 185 S.W.3d at 505; *McCoy v. Watkins*, No. 05-14-00844-CV, 2015 WL 6751023, at *2 (Tex. App.—Dallas Nov. 5, 2015, pet. denied) (mem. op.) (citations omitted) ("There is no dispute that the initiation of the

15

case against appellant, the prosecution of that case, and appellant's conviction were all either judicial acts or acts 'intimately associated with the judicial phase of the criminal process.'").

Hartman seeks to analogize this Court's prior ruling to the facts here. Hartman argues in his brief that because this Court held before that Walker was not acting within the course and scope of his employment as a district judge when he ordered Hartman arrested, "it necessarily follows all other participants in this conspiracy who were government employees, could not have been acting within the normal course and scope of their employment, within the meaning of TTCA §§ 101.001(5) . . . and 101.106(f)." We disagree. In *Walker v. Hartman,* this Court explained that "[a] judge has immunity when acting in the course of a judicial proceeding over which he has jurisdiction." 516 S.W.3d at 82 (citation omitted). We determined that when Walker arrested Hartman for disrupting his courtroom, his actions were covered by judicial immunity. *See id.* The actions he took after arresting Hartman, however, were not covered. *See id.* All of Alford's actions on this case occurred in the course and scope of his employment, and while Hartman alleges that Alford participated in an "extra

16

judicial conspiracy," Alford's actions, even if malicious or directed by ulterior motives, fall within the course and scope of his employment.[5]

## 2. Government Employer

After determining whether Alford's actions fall within the "scope of employment" as required by section 101.106(f), we examine whether Hartman's claims "could have been brought under the [TTCA]." *See* Tex. Civ. Prac. & Rem. Code. Ann. § 101.106(f); *Alexander*, 435 S.W.3d at 792. Hartman argues that Alford engaged in malicious prosecution. Claims of malicious prosecution are claims that could have been brought against a government unit under the TTCA. *See Alexander*, 435 S.W.3d at 792 (holding that the plaintiff's claims about police officer's malicious prosecution could have been brought under TTCA against the county); *see also McFadden v. Olesky*, 517 S.W.3d 287, 297–98 (Tex. App.—Austin 2017, pet. denied) (stating that a malicious prosecution claim could have been brought against

---

[5] Because Alford is entitled to absolute immunity, we need not address whether qualified immunity applies. *See Bradt v. West*, 892 S.W.2d 56, 71 (Tex. App.—Houston [1st Dist.] 1994, pet. denied). Qualified immunity applies to acts performed by a prosecutor when a prosecutor "'functions as an administrator rather than as an officer of the court' he is entitled only to qualified immunity." *Buckley*, 509 U.S. at 273 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976)). This includes giving advice to the police, (*see Font v. Carr*, 867 S.W.2d 873, 882 (Tex. App.—Houston [1st Dist.] 1993, pet. denied)); making a statement to the press, (*see Oden v. Reader*, 935 S.W.2d 470, 476 (Tex. App.—Tyler 1996, no writ)), and in performing discretionary functions (*see Putthoff v. Ancrum*, 934 S.W.2d 164, 168 (Tex. App.—Fort Worth 1996, writ. denied)).

17

the government employer as well as the employee under the TTCA); *City of Laredo v. Reyna*, No. 04-15-00147-CV, 2015 WL 4479834, at \*2–3 (Tex. App.—San Antonio July 22, 2015, no pet.) (mem. op.) (holding that malicious prosecution is an intentional tort that falls under the TTCA). Therefore, we hold that Alford is entitled to immunity from civil liability under the TTCA.

## C. Motion for Continuance

Hartman contends that the trial court erred when it denied his motion for continuance to allow for discovery based on Alford's plea to the jurisdiction. He argues that "[t]his case has been pending for six (6) years, and [he] has still been precluded from taking any depositions." Hartman states that Alford's plea to the jurisdiction contains facts "outside [of] the record and not supported by the evidence[.]"

"The trial court may order a continuance of a summary judgment hearing if it appears 'from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition.'" *Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 161 (Tex. 2004) (quoting Tex. R. Civ. P. 166a(g)). "'The granting or denial of a motion for continuance is within the trial court's sound discretion.'" *Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997) (quoting *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986)). A trial court's ruling on a

motion for continuance, therefore, will not be disturbed on appeal unless the record reflects a clear abuse of discretion. *State v. Wood Oil Dist., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988). In making this determination, we must examine the entire record and not just the sworn allegations in the motion for continuance. *See Gregg v. Cecil*, 844 S.W.2d 851, 853 (Tex. App.—Beaumont 1992, no writ) (citation omitted).

> In deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery, we consider factors such as the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought.

*D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 223 (Tex. App.—Fort Worth 2013, no pet.) (citation omitted). An abuse of discretion will be found only if it "clearly appear[s] from the record that the trial court has disregarded the party's rights" and that "the trial court's decision was arbitrary and unreasonable." *MKC Energy Invs., Inc. v. Sheldon*, 182 S.W.3d 372, 378 (Tex. App.—Beaumont 2005, no pet.) (citations omitted).

Hartman alleges Alford pleaded new facts in his fifth amended plea to the jurisdiction that warranted discovery and that he had not been able to conduct discovery for six years during this case. Specifically, Hartman asserted discovery was necessary because Alford denied that he was involved in a conspiracy to

19

prosecute Hartman. Alford, though, asserted prosecutorial immunity in Alford's first pleading.

As we have stated before, Alford is cloaked with absolute prosecutorial immunity for actions involved in initiating and prosecuting Hartman. *See Buckley*, 509 U.S. at 273; *Oden*, 935 S.W.2d at 474–475. The evidence showed that Alford denied being in Walker's courtroom the day Hartman was arrested, he did not communicate with District Attorney's office during its investigative phase, and he only reviewed the file presented to him to make a determination on whether to prosecute Hartman. *See Quested v. City of Hous.*, 440 S.W.3d 275, 282 (Tex. App.— Houston [14th Dist.] 2014, no pet.) (concluding a trial court did not abuse its discretion when it granted the city's plea to the jurisdiction and denied plaintiff's motion for continuance because it determined the police officer acted "within the scope of his employment" when he collided with a car on his way from his home to a hostage standoff and granted the city's plea to the jurisdiction because the officer's affidavit consistently stated the police officer was "on his way to an emergency standoff" when the collision occurred). Any purported discovery of Alford's involvement in a conspiracy would not negate his prosecutorial immunity.

The only legal issue is whether Alford acted within the scope of his prosecutorial duties by engaging in activities intimately associated with the judicial

20

process. Hartman's subjective belief or the subjective belief of other witnesses that Alford engaged in an extra-judicial conspiracy does not change the fact that Alford's activities entitled him to absolute prosecutorial immunity. Hartman failed to articulate how discovery could reasonably lead to evidence raising a fact issue material to the trial court's determination of Alford's plea to the jurisdiction. *See Joe*, 145 S.W.35 at 162–63 (holding that additional discovery would not raise a fact issue on official immunity when the activities described fall within the "scope of his authority as a city councilperson"); *see also Klumb v. Hous. Mun. Emps. Pension Sys.*, 405 S.W.3d 204, 227–28 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 458 S.W.3d 1 (Tex. 2015) (plaintiff's argument that they needed additional discovery was without merit because "subjective views of [witnesses] were not material to the legal determination" of the case); *Quested*, 440 S.W.3d at 282 (stating that a trial court did not abuse its discretion when it denied a plaintiff's motion for continuance because the officer's subjective beliefs were "irrelevant to [the] underlying legal issue").

In addition, Hartman's case had been on file since 2016. Alford, in his first response to Hartman's petition, asserted his plea to the jurisdiction alleging prosecutorial immunity and disputing Hartman's claims of "an illegal conspiracy." He denied ever engaging in a judicial conspiracy and asserts that he is entitled to

21

absolute prosecutorial immunity. No hearing on Alford's plea to the jurisdiction and motion for summary judgment was held until January 2019. Although Hartman alleges that the appeals delayed him, the appeal pertained to Hartman's claims against other individuals, not Alford. Hartman has failed to show how he was prevented from engaging in discovery of Alford's claims. In reviewing the complexity of the issues presented and the length of time the case had been on file, we conclude the trial court did not abuse its discretion in determining there had been adequate time for discovery. *See Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 689 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). We hold that the trial court did not abuse its discretion when it denied Hartman's motion for continuance.

## IV. Conclusion

Given our resolution of this case, we need not reach any additional issues Hartman raises on appeal.[6] We affirm the judgment of the trial court.

---

[6] Alford, in his 5th amended plea to the jurisdiction, pleads both a plea to the jurisdiction and a motion for traditional summary judgment. In both his plea to the jurisdiction and motion for summary judgment, Alford asserts jurisdictional arguments that he is entitled to absolute prosecutorial immunity for his actions. Because we find that the trial court did not err when it determined that it lacked jurisdiction over Hartman's claims, we do not have to address Alford's motion for summary judgment. *See Baylor College of Med. v. Hernandez*, 208 S.W.3d 4, 9 n.4 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (stating that jurisdiction can be raised both in a plea to the jurisdiction and a motion for summary judgment, and if jurisdiction is argued in both motions, the Court's conclusion regarding a lack of jurisdiction applies to both pleadings).

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on June 10, 2019
Opinion Delivered September 19, 2019

Before McKeithen, C.J., Kreger and Horton, JJ.