

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00279-CV

Maryvel **SUDAY**,
Appellant

v.

Ana **SMITH**,
Appellee

From the County Court at Law, Val Verde County, Texas
Trial Court No. 3644CCL
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: March 16, 2022

AFFIRMED

The underlying proceedings for a protective order ultimately resulting in this appeal arose out of a family dispute involving a contentious divorce proceeding between appellant's mother and father. After numerous renewals of a temporary protective order, appellant sought sanctions against the county attorney for allegedly wrongful actions undertaken in her prosecution of the protective order. This appeal comes before us after the trial court granted appellee's plea to the jurisdiction. Because appellee is entitled to absolute prosecutorial immunity, we affirm.

**BACKGROUND**

On November 21, 2017, Ana Markowski Smith, who then served as the Val Verde County Attorney, filed an Application for Protective Order on behalf of appellant's adult siblings and their children (collectively, the "complainants") against appellant. The application attached a sworn statement in which appellant's sister stated: (1) in the past, appellant used a baseball bat to hit their father's car and break its windshield; (2) with two children present, appellant hit her sister on the forehead with a coffee mug after a disagreement; (3) appellant hit and left scratch marks on her nephew because she did not like something he said; (4) on November 7, 2017, appellant went to her niece and nephew's school and told her nephew that his mother was a liar and he should not believe anything his mother tells him about appellant's behavior; (5) appellant has been diagnosed with a mental illness that causes her to be "irrational, impulsive and may rise to psychosis"; and (6) appellant has threatened her family with violence and to cause their deaths. The facts formed the basis for the requested protective order.

On November 29, 2017, the trial court signed a "Temporary Ex Parte Protective Order and Order Setting Hearing." The order restrained appellant from committing family violence; transferring, encumbering or disposing of property mutually owned by the parties except in the ordinary course of business; directly communicating with complainants in a threatening or harassing manner; communicating a threat to complainants through any person; going within 500 feet of complainants' residences or places of employment or business; and engaging in conduct directed towards complainants that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass complainants. The order recited that it was effective immediately and binding for twenty days. The order required notice to be given to appellant to appear on December 4, 2017 to determine whether the trial court should issue a protective order.

At the December 4, 2017 hearing, appellant requested a continuance, which the trial court granted until January 16, 2018. Later that day, the trial court signed a written order finding the temporary protective order should be extended for twenty days. On January 31, 2018, the trial court again renewed the temporary protective order for twenty days.

On March 12, 2018, the parties appeared for a hearing on the protective order. At that hearing, appellant stated that she "gave them [complainants] 60 days" (between January and March 2018) to prepare for trial. At that hearing, the trial court made clear that it intended the protective order to remain in effect while the divorce proceeding was pending. At appellant's request, on March 28, 2018, the trial court set a pretrial hearing and appellant's motion for continuance of the hearing for April 2, 2018.

On April 2, 2018, the trial court signed a written order granting appellant's motion to continue the hearing on the application for protective order. The trial court found that there was a divorce action pending before it and found that the conflict arising out of the divorce proceeding may be directly connected to this proceeding. Accordingly, the trial court extended the temporary protective order until the resolution of the divorce.

Appellant thereafter sought to dismiss the protective order and filed for a counter order of protection alleging she—not complainants—required protection. Complainants filed a response indicating that appellant's mother had passed away during the appeal of the divorce proceeding, resulting in appellant filing a probate proceeding in Bexar County, Texas.

On December 19, 2019, appellee Smith told the trial court, "[The protective order] lasts until -- the way it's ordered is that you would revisit it at the time of the divorce, when the divorce is completed; that you would revisit it at that time, because most of the issues were based on the divorce." The trial court expressed continued concern based on conflict regarding estate issues: "My concern is during the divorce action it was very important that we keep you apart. Your

siblings wanted to deal with this situation on the divorce without having to worry about getting into a fuss with you, and now I just assume there's going to be estate issues coming up." Appellant stated, "I don't have a problem being separated from them. I honestly don't. If they want me – I mean, this order of protection can remain for a lifetime. If they don't want me near them, I won't get near them. . . . And so if you want to go ahead and do the order of protection, continue it, all I ask is that they don't get near me either, so it's very fair for both of us, since their order of protection is full of lies."

After further argument, the trial court stated, "It appears to me that the family dynamics are – not really that much has changed since senior Ms. Suday died. So it's probably appropriate to keep it in place as long as we've got that family dynamic, that there's a dispute. First it was about her marital estate. Now it's about her estate." Appellant made clear that she wanted the protective order to be reciprocal, but the trial court did not have the issue before it: "I think that was probably good advice then and probably good advice today, for everybody to stay away from each other, but I can't make up a protective order sua sponte off the bench. They filed a motion for protective order against you. I heard it, I granted it."

Complainants later filed a petition seeking to extend the protective order on the basis that appellant was continuing to harass them, and the divorce proceeding was not final because of appellant's appeal. The trial court set the motion to extend protective order for a hearing to occur on February 6, 2020.

At the February 6, 2020 hearing, appellant told the court that she did not "want to communicate with" complainants. She also stated she was not opposed to a protective order prohibiting direct communication with her siblings and their children. The trial court stated, "Trust me, I know that it's going on. I've observed it on so many occasions that there's not a good relationship between you and your siblings. And I thought it was a good idea to keep you apart,

officially keep you apart during the divorce. And I think it's – based on everything you've told me today in your arguments, it sounds like it's still a good idea to keep y'all apart." After appellant requested mediation of the protective order, the trial court stated, "I'm going to extend the protective order until the mediation is completed. If it's not successfully completed, then we'll have to come back and finish this hearing. But we'll just do an extension of what's in place right now. . . . So give me an order extending the same terms. Don't add anything to it. Give me an order appointing the mediator, if y'all agree. If you don't, give me an order with a blank and I'll fill it in."

On February 17, 2020, the trial court signed an extension of the temporary protective order and order setting hearing to remain in effect until further order of the trial court. On March 20, 2020, appellant filed a notice of vacation/unavailability that stated appellant was unavailable "for hearings, settings, conference calls, and/or trials from April 3 through May 11, 2020."

On August 21, 2020, appellant filed a motion seeking Smith's recusal on the basis of various alleged wrongdoings. At an August 31, 2020 hearing, the trial court stated, "The thing that you have in front of me right now is a proposal by Ms. Smith that she not proceed today, that she not present evidence, that we maintain the status quo of you not having any contact with your family until we can try to finish up this divorce issue that Mr. Munoz is waiting to do. And I'm going to grant that request, Ms. Smith, and if you can get me an order extending and then you and Sandy can coordinate with Ms. Henderson for us to reset that matter sometime about 60 days out." This hearing resulted in the trial court signing another extension order on September 21, 2020. That order again recited it remains in effect until further order of the court and set a protective order hearing on November 30, 2020. Due to a change in the trial court's schedule, the hearing was later reset to December 16, 2020. On December 21, 2020, the trial court again extended the temporary protective order until further order of the trial court.

After the 2020 election, Smith was replaced by her successor, David Martinez, who moved to withdraw on the basis that the Val Verde County Attorney's Office "will not prosecute protective order applications for parties who have retained private attorney(s) in ancillary litigation involving the same parties." The trial court granted the withdrawal. Appellant hired an attorney who filed a motion to vacate the protective order on the basis that it was void after the statutory maximum time was reached. The trial court set a hearing on the motion to vacate for March 30, 2021. At the hearing, complainants' counsel did not resist vacation of the order on the grounds that the statutory maximum time was reached, and the trial court vacated the temporary protective order on the basis that the new county attorney decided not to pursue the case further.

On May 18, 2021, counsel for Smith appeared in the proceeding to represent the county and all county employees, including Smith. On May 20, 2021, Smith filed a plea to the jurisdiction. On June 1, 2021, appellant filed an amended motion for sanctions seeking sanctions against Smith. The essence of the motion for sanctions is that Smith's actions seeking to continue the temporary protective order were allegedly frivolous and filed in bad faith and to harass after the expiration of the statutory maximum time for temporary protective orders, entitling appellant to sanctions under Chapter 10 of the Texas Civil Practice & Remedies Code and Rule 13 of the Texas Rules of Civil Procedure. Appellant also sought to sever her claims for sanctions against Smith. On June 10, 2021, the trial court granted the plea to the jurisdiction and denied the motion to sever. This appeal followed.

### STANDARD OF REVIEW

To establish subject matter jurisdiction, a plaintiff must allege facts that affirmatively demonstrate the court's jurisdiction to hear the claim. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). A party may contest a trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d

- 6 -

154, 160 (Tex. 2016). We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *Id.* at 160; *County of Bexar v. Steward*, 139 S.W.3d 354, 357 (Tex. App.—San Antonio 2004, no pet.). Our de novo review looks to the pleader's intent and construes the pleadings in its favor. *Houston Belt*, 487 S.W.3d at 160. If the pleadings affirmatively negate jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004).

## PROSECUTORIAL IMMUNITY

Texas courts have followed federal courts and consistently held as a matter of law that absolute immunity extends to quasi-judicial officers. *Brown v. Lubbock County Comm. Court*, 185 S.W.3d 499, 505 (Tex. App.—Amarillo 2005, no pet.) (citing *Oden v. Reader*, 935 S.W.2d 470, 474–75 (Tex. App.—Tyler 1996, no pet.)). Accordingly, prosecuting attorneys enjoy immunity when performing in their role as prosecutors. *Id.* (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)).

"Activities intimately associated with the judicial phase of the criminal process, such as initiating a prosecution and presenting the State's case, are functions to which absolute immunity applies with full force." *Hartman v. Barker*, No. 09-19-00052-CV, 2020 WL 826706, at *8–9 (Tex. App.—Beaumont Feb. 20, 2020, pet. denied) (mem. op.); *Lesher v. Coyel*, 435 S.W.3d 423, 430 (Tex. App.—Dallas 2014, pet. denied). Prosecutorial immunity has also been extended to bad acts performed by prosecutors. *See Imbler*, 424 U.S. at 427 (noting that absolute immunity applies to a prosecutor who engages in "malicious or dishonest action"); *see also Burns v. Reed*, 500 U.S. 478, 489–90 (1991) (explaining that "prosecutors and other lawyers were absolutely immune from liability for damages at common law for making false or defamatory statements in judicial proceedings . . . and also for eliciting false and defamatory testimony from witnesses"); *Lesher*, 435 S.W.3d at 430–31 (applying absolute immunity to a prosecutor accused of withholding grand jury handbook from grand jury and presenting inadmissible evidence); *Clawson v. Wharton*

*County*, 941 S.W.2d 267, 272 (Tex. App.—Corpus Christi, 1996 pet. denied) (determining that a prosecutor accused of taking bribes still enjoys absolute immunity because "[a]bsolute immunity will shelter a prosecutor even should he act maliciously, wantonly, or negligently"); *Gentry v. Smith*, No. 05-18-01181-CV, 2019 WL 4033947, at \*3–4 (Tex. App.—Dallas Aug. 27, 2019, no pet.) (mem. op.) (concluding a prosecutor accused of falsifying a plea agreement was entitled to absolute immunity).

Absolute prosecutorial immunity is effective against all civil lawsuits whether the allegations are lodged against the individual in her personal or official capacity. *Hartman*, 2020 WL 826706, at \*8 (citing *Clawson*, 941 S.W.2d at 273; *Lesher*, 435 S.W.3d at 430; and *Brown*, 185 S.W.3d at 505).

As county attorney, Smith was statutorily conferred the status of "prosecuting attorney" with respect to protective orders on behalf of any person alleged to be a victim of family violence.[1] *See* TEX. FAMILY CODE §§ 71.007, 81.007, 82.002; *see also Lancaster v. Harris County*, 821 F. App'x 267, 272 (5th Cir. 2020) (discussing statutory scheme in context of local government attorneys). Accordingly, Smith enjoys absolute immunity while performing in her role as prosecutor. *See Brown*, 185 S.W.3d at 505.

Taking as true appellant's allegations in her amended motion for sanctions,[2] Smith's actions in seeking to extend and/or modify the temporary protective order—at times taken at the trial court's sua sponte request—were clearly within the scope of her prosecutorial functions. *See Lesher*, 435 S.W.3d at 430. In other words, Smith's actions fall within the scope of actions to

---

[1] Upon application by a prosecuting attorney, the trial court has a statutory duty to render a protective order "if the court finds that family violence has occurred and is likely to occur in the future." TEX. FAMILY CODE § 81.001.

[2] Although appellant argues Smith's *ultra vires* actions provide an exception to prosecutorial immunity under *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009), those claims were not preserved for our review because they were not pled below. *See* TEX. R. APP. P. 33.1(a).

which absolute prosecutorial immunity applies. *See id.* Smith's "absolute immunity is effective against all claims regardless of whether they are lodged against the individual possessing it in [her] official or personal capacity." *See id.*

## CONCLUSION

Smith is entitled to absolute prosecutorial immunity. Accordingly, we affirm the trial court's judgment granting Smith's plea to the jurisdiction.

Lori I. Valenzuela, Justice